## ABANDONMENT OF CHILD NOT SHOWN BY FAILURE TO PAY FOR ITS SUPPORT.

Circuit Court of Cuyahoga County.

THE CLEVELAND CHRISTIAN ORPHANAGE v. CHARLES L. BARCUS.

Decided, January 11, 1909.

A father placed his minor child in an orphanage association, agreeing to pay a stipulated sum weekly for its support. He also agreed that if he failed to pay the weekly charge for three consecutive months after the same became due he would relinquish all his rights, interest and control of his child and vest the same in the association, so that it should have all the rights to and authority over the child which he had by reason of being its father. The association cared for and supported the child for over a year, until there was due it quite a sum which the father neglected to pay. He then began proceedings in habeas corpus to recover possession of his child, and the association answered that it was entitled to the child under the terms of the agreement. *Held:* The agreement was unilateral, not binding the association to care for and support the child and so unenforceable by it, and further, the fact that the father was in debt for the care of his child did not show that he had abandoned it.

*Alden & Hopple,* for plaintiff in error.
*Kerruish & Kerruish,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

Barcus is the father of Theodrick M. Barcus, an infant about 5 years of age; the plaintiff in error is a corporation. On the

18th day of February, 1907, he (Barcus) having lost his wife and being unable to care for said child in his own home, "voluntarily and of his own free will placed said child, Theodrick M. Barcus, in the Cleveland Christian Orphanage of the Benevolent Association of the Christian Church for the purpose of having said child cared for, supported and maintained by said orphanage." That for the purpose of securing the services in caring for, supporting and maintaining said child, said Charles L. Barcus voluntarily and of his own free will signed, executed and delivered to said orphanage the following agreement:

"Know all men by there presents,· that I, Charles L. Barcus, of the county of Cuyahoga, and state of Ohio, being the father of a certain child named Theodrick M. Barcus, about 3½ years old, have placed the said child in the care and custody of the Cleveland Christian Orphanage of the Benevolent Association of the Christian Church, city of St. Louis, Mo., to be cared·for, supported and maintained, and in consideration of said care, support and maintenance of said child, under the rules and regulations of said association, I hereby agree to pay said association $1.50 per week, weekly in advance. And should I fail to pay the said weekly charge for three consecutive months after the same is due and payable, I hereby agree to relinquish and in that event, do hereby relinquish all my rights, interest and control of the said child, and vest the same in the said association, so that the said association shall, in that event, have all the said rights to and authority over the said child that I now have, by reason of being the father of said child as aforesaid.
"Witness my hand and seal, this the 18th day of Feb., 1907.
"Witnesses, Mrs. C. B. Lamb.    CHARLES L. BARCUS. (Signed.)"

Said Charles L. Barcus paid nothing to said orphanage nor anything toward the amount he ·agreed to pay to cover any time since April 4th, 1907.

Said orphanage cared for, supported and maintained said child continuously from February 18, 1908, until the said child was taken from it, under a writ of habeas corpus issued in the action, out of which this proceeding in error arises, so that by the terms of said contract said Charles L. Barcus is indebted to said orphanage in the sum of $107.

Said orphanage is a proper custodian of said child, and the home maintained by it in which said child was kept and cared for by it is a proper and suitable place for the care and support of said child, and no fault is found in that regard with said orphanage.

While said child was an inmate of the home maintained by said orphanage, to-wit, on the 10th day of August, 1908, the plaintiff commenced an action in the court of common pleas in habeas corpus, to secure the custody of said child as against said orphanage. Upon trial had in that case, the prayer of the plaintiff's petition was granted and the custody of the child taken from the orphanage and given to the father.

To reverse this judgment the present action is prosecuted.

The facts as hereinbefore stated were agreed upon between the parties to this action, as appears by the bill of exceptions filed in this court.

Upon these facts was the court right in its judgment?

Whether a parent may, in Ohio, by contract, other than such contract as is provided by statute in the case of apprentices, transfer all right to the custody and control of his minor child, need not here be decided, because the writing entered into between the father and the orphanage in this case was not a contract which could thus transfer the custody and control of the child, whether a contract thus transferring the custody and control of the child could be made or not, and this is so for want of mutuality in the contract. It will be noticed that the orphanage made no promise to do anything on its part. The promise in the writing is wholly on the part of the father, and except to the extent that it has been executed, it would not bind either of the parties. Under the terms of this writing the orphanage was at liberty at any time to refuse to further care for and support this child.

If the result of this litigation should be a reversal of the judgment of the court of common pleas, and if this court, or that court should enter judgment in favor of the orphanage as to the custody of the child, the orphanage might immediately refuse to care for and maintain the child and still violate no provision

of the writing entered into between the parties. If the custody and maintenance of the child were left in the orphanage the father would be under obligation to pay $1.50 per week provided for in the writing, so long as the orphanage should continue to care for the child, and this might continue up to the date when the child should reach majority. On the part of the father, the obligations entered into constitute but a naked promise on his part, to be enforced only so far as the orphanage has executed on its part that for which the father promised to pay. It would seem then that there could be no doubt that under this writing the orphanage is not entitled to the custody of the child as against the father.

It may, however, be urged that since a parent may forfeit his right to the custody of his child by abandonment that the facts here found such abandonment. This position is not sound. The father has shown by this writing that he made provision for the maintenance of his child, and the child during all of the time was properly provided for. True, the father failed to pay what he had agreed to pay for such maintenance, and he is in the situation so far as an abandonment is concerned that any parent would be in who makes such arrangements for the board and support of his minor child at a fixed compensation and fails to pay, in short, runs into debt for the support of his child. The facts found in this case do not warrant the conclusion that the child has been abandoned by the father.

There is no evidence in this case as to the fitness of the father to have the custody of his child, but until the contrary is shown, the presumption is that the father is a suitable person to have the care and custody of his child, and surely this is not overcome by the showing that he has allowed himself to fall into debt to the amount of $107 for the support of the child. The situation, then, is this: that the father seeks to take the care and maintenance of his child upon himself, as by the laws of the state and the laws of nature it is his duty to do. So far as appears, he is an entirely suitable person to have such custody, except as this is rebutted by the fact that he has failed for some sixteen months to pay what he agreed to pay for the child's sup-

port.   The orphanage is under no obligation by contract or otherwise to care for and support this child for a day or an hour, although it furnishes an entirely suitable home for the child. Of course, no claim could be made here, or would be made here, that this writing is to be treated as a pledge of the child to the orphanage, as security for the payment of the debt which the father incurred for its support, as such claim would be against all our notions of the proper way to treat children.

The result is that we find the writing does not entitle the orphanage to hold the child as against the father, nor has there been any such abandonment of the child by the father as would entitle the orphanage, or anybody else, to hold the child as against the father.

Suppose that immediately before the commencement of the action in habeas corpus the orphanage had expelled this child from its home and it had been immediately taken into the home of some family prepared to give it a suitable home and maintenance and surround it with proper influences and the father had begun habeas corpus proceedings against such family.  So far as abandonment is a defense here against such father, abandonment would be available as a defense against the father in the case supposed, and yet it is inconceivable that any court, in the case supposed, would hold against the father without a showing other than the showing made here that he had failed for sixteen months to pay for the child's support at the place where he had arranged that the child should be supported.

The result is that the conclusion is reached by a majority in this court that the judgment of the court of common pleas ought to be, and such judgment is affirmed.